**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-CV-00059-GNS-HBB**

**WILLIAM MATTHEW YOUNG**                                                **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                       **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of William Matthew Young ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 18) and Defendant (DN 21) have filed a Fact and Law Summary. For the reasons that follow, the undersigned finds that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

Pursuant to General Order No. 2019-11, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations (DN 14). By Order entered November 2, 2020 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

FINDINGS OF FACT

On October 6, 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 52, 295-301, 302-03).   Plaintiff alleged that he became disabled on December 22, 2015, as a result of anxiety, depression, shoulder injury, neck injury, back injury, elbow injury (Tr. 52, 332).   The applications were denied at the initial and reconsideration levels (Tr. 52, 129-162, 163-202).   Thereafter, Plaintiff requested an Administrative Law Judge hearing (Tr. 226-227).   On October 17, 2018, Administrative Law Judge James Satterwhite ("ALJ") conducted a video hearing from St. Louis, Missouri (Tr. 52, 93-94).   Plaintiff and her counsel, Mary G. Burchett-Bower, participated from Bowling Green, Kentucky (Id.).   James E. Miller, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated December 5, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 52-67).   The ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017 (Tr. 54).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 22, 2015, the alleged onset date (Tr. 55).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: cervical and lumbar degenerative disk disease; thoracic scoliosis; left cubital tunnel syndrome, status-post release; bilateral carpal tunnel syndrome; degenerative joint disease of the left shoulder; left upper truck brachial plexopathy; lung nodules; intermittent diplopia associated with episodes of vertigo; obesity; anxiety disorder; major depressive disorder; and conversion disorder (Id.).   The ALJ also determined that Plaintiff's hypertension, blood pressure, and alcohol use disorder are "non-severe" impairments within the meaning of the regulations (Id.).   Additionally, the ALJ found that the

2

following alleged problems are not medically determinable impairments: complex regional pain syndrome ("CRPS"), stuttering and pain when speaking, hearing condition, genitalia pain, grinding in his ankle and knee joints, bad circulation, post-traumatic stress disorder ("PTSD"), irritable bowel syndrome, and headaches (Tr. 56).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work because he can perform only occasional reaching, handling, and fingering with his non-dominant left upper extremity; he cannot reach overhead with his left upper extremity; he can perform frequent but not continuous feeling bilaterally; he can perform occasional climbing of ramps and stairs; but no climbing of ladders, ropes, and scaffolds; he can perform occasional balancing, stooping, kneeling, crouching, and crawling; he cannot perform work involving exposure to extreme cold, and can only tolerate occasional exposure to wetness and vibration; he can tolerate occasional exposure to concentrated levels of respiratory irritants such as fumes, odors, dusts, gases and poor ventilation; but he cannot work around workplace hazards such as dangerous moving machinery and unprotected heights; he can frequently, but not continuously, use his eyes for tasks requiring fine visual acuity such as reading or working with small parts; his work should not involve the operation of a motor vehicle; he can (on a sustained basis) understand, remember, and carry out simple instructions; he can use judgment in making simple work-related decisions; he can respond appropriately to supervision, coworkers, and usual

work situations; and he can deal with changes in a routine work setting (Tr. 59).   The ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of his past relevant work (Tr. 64).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 65-66).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 22, 2015, through the date of the decision (Tr. 67).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 291-94).   The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in

evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Finding No. 3</u>

1. Arguments of the Parties

Plaintiff challenges the ALJ's step two determination regarding his alleged problem with headaches (DN 18 PageID # 1111, citing Tr. 56).   Specifically, the ALJ found this impairment is neither "medically determinable" nor "severe" (Tr. 56).   Plaintiff asserts these findings are not supported by the evidence of record (<u>Id.</u>).   Plaintiff points out that "evidence from University of Louisville Physicians Neurology indicates the assessment of Chronic daily headaches and Dizziness by Thong Pham, M.D., on July 12, 2018" and Dr. Pham prescribed Amitriptyline HCL (DN 18 PageID # 1111, citing Tr. 933-935, 1015-1017).   Additionally, during a follow-up office

6

visit on October 8, 2018, Dr. Pham noted that Plaintiff was started Venlafaxine for chronic daily headaches because could not tolerate nortriptyline due to sedation (Id. citing Tr. 1012-1014).

Defendant contends the alleged error is harmless because, after finding Plaintiff had severe and non-severe impairments at step two, the ALJ proceeded to the remaining steps of the evaluation (DN 21 PageID # 1129-31).   Further, Defendant points out that the ALJ viewed the headaches as a symptom of Plaintiff's cervical degenerative disc disease, rather than a separate medically determinable impairment (Id. citing Tr. 56).   The ALJ also noted that Plaintiff did not receive any consistent or significant treatment for his headaches (Id.).   Moreover, in the context of assessing Plaintiff's RFC, the ALJ discussed Plaintiff being diagnosed with chronic daily headaches and dizziness (Id. citing Tr. 61).

2.  Discussion

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).[1]   To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs,

---

[1] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1522(b), 416.922(b).

7

symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.   20 C.F.R. §§ 404.1521, 416.921; SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).   To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. §§ 404.1509, 416.909.

At step two, the ALJ acknowledged Plaintiff's alleged problem with headaches but noted "there was no objective evidence that any medical doctor diagnosed the claimant with these impairments or offered any consistent or significant treatment for them" (Tr. 56).   The ALJ explained the existence of a medically determinable impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings (Id.).   Further, the ALJ indicated even if this impairment was medically determinable, there was no indication it was severe because there was no evidence showing it caused Plaintiff more than minimal ongoing work-related functional impairment (Id.).

The medical evidence shows that Dr. Pham primarily relied on Plaintiff's subjective statements for the diagnostic assessment/impression of chronic daily headaches and dizziness because the objective test results like an MRI of the brain and an MRA were unremarkable (*see* Tr. 1012-14, 1015-17).   For this reason, it is a close call on the question of whether these two treatment notes—dated July 12, 2018 and October 8, 2018—satisfy the regulatory requirements for a medically determinable impairment.   *See* 20 C.F.R. §§ 404.1521, 416.921; SSR 16-3p, 2017 WL 5180304, at *11.   It is an equally close call on the issue of whether Dr. Pham offered any consistent or significant treatment for the headache impairment because there are only two

treatment notes in the record.[2]   Moreover, two treatment notes from Dr. Pham fall woefully short of establishing that Plaintiff's headache impairment has lasted or is expected to last for a continuous period of at least 12 months.   *See* 20 C.F.R. §§ 404.1509, 416.909.   Equally important, Plaintiff has failed to provide a developed argument disputing the ALJ's finding that there is "no evidence" demonstrating Plaintiff's headache condition caused "more than minimal ongoing work related functional impairment" (*see* DN 18 PageID # 1111 *and* Tr. 56).   *See* 20 C.F.R. §§ 404.1522(a), 416.922(a).   For this reason, Plaintiff has waived the issue.   *See* United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Thus, Plaintiff has not successfully challenged the ALJ's step two determination regarding the headache condition.

Finding No. 5

1.  Arguments of the Parties

Plaintiff argues that the ALJ's physical RFC and mental RFC determinations are not supported by substantial evidence in the record (DN 18 PageID # 1112-17).   Plaintiff explains that the ALJ gave significant weight to the physical limitations expressed by Dr. Culbertson at the reconsideration level but adjusted some of the restrictions based on subsequently received medical evidence (Id.).   Plaintiff asserts the ALJ is simply unqualified to assign physical limitations based

---

2  The two treatment notes indicate Dr. Pham initially prescribed nortriptyline for Plaintiff's chronic daily headaches and approximately three months later changed the prescription to venlafaxine due to the nortriptyline causing sedation (*see* Tr. 1012-14, 1015-17).

on a review of the medical evidence (Id.).   Plaintiff contends the ALJ instead should have obtained an updated functional opinion from either a testifying medical expert or a consultative physical examiner (Id.).

Plaintiff explains the ALJ made his mental limitation findings after assigning little weight to mental limitations expressed by Ollie C. Dennis, Ed.D. (consultative psychological examiner), Dr. Jack Anderson (treating physician), and the non-examining state agency medical consultants (Id.).   Plaintiff asserts the ALJ is simply unqualified to assign mental limitations based on a review of the medical evidence (Id.).   Plaintiff contends the ALJ instead should have obtained an updated opinion from a testifying medical expert or a consultative psychological examiner (Id.).

Plaintiff also takes issue with the ALJ's symptom evaluation because the ALJ purportedly made no effort to explain his conclusions (Id. citing SSR 16-3p (will discuss factors pertinent to the evidence of record)).

Defendant contends that the ALJ's physical and mental RFC findings are supported by substantial evidence in the record (DN 21 PageID # 1331-40).   Defendant indicates that the ALJ reasonably determined the record contained sufficient evidence to assess Plaintiff's physical and mental RFC without medical expert testimony or consultative examinations (Id. citing 20 C.F.R. §§ 404.1512(d), 416.912(d); Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 275 (6th Cir. 2010); see also Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2011) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.")). Defendant asserts that the ALJ sufficiently explained how he evaluated Plaintiff's subjective

complaints (Id.).   For example, the ALJ noted that Plaintiff's allegations were not consistent with the objective evidence and that his activities of daily living and the treatment record did not support his extreme allegations (Id.).

     2.     Discussion

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC).   An Administrative Law Judge makes this finding based on a consideration of medical opinions and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c).   Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge.   20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b),   404.1527,   404.1545(a)(3),   416.902,   416.913(a)(2),   416.913a(b),   416.927, 416.945(a)(3).   Thus, in making the RFC finding an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The process of assigning weight to medical opinions in the record begins with a

determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).   If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart, 710 F.3d at 376.

The ALJ addressed three medical opinions expressing functional limitations imposed by Plaintiff's physical impairments (Tr. 62-64).   Two of the medical opinions came from treating sources and the third came from a non-examining state agency physician at the reconsideration level (Id.).

Robert Culbertson, M.D., a non-examining state agency physician, rendered his opinion on July 11, 2017, (Tr. 176-80, 195-99).   He limited Plaintiff to light work with some postural, manipulative, and environmental restriction (Id.).   Huey Tien, M.D., FACS, expressed his treating source opinion on June 3, 2017 (Tr. 896).   He diagnosed Plaintiff with left upper trunk brachial plexopathy, traction type, and restricted Plaintiff to working with his right hand permanently (Tr. 896).   On October 10, 2018, Jack Anderson, D.O., expressed his treating source opinion regarding Plaintiff's physical and mental impairments (Tr. 959-62).   He diagnosed Plaintiff with migraines, anxiety, neuropathy, agoraphobia, panic disorder, and depression (Tr. 959).   The physical and mental limitations he imposed included: walking one city block; sitting for one-hour and 15 minutes at a time; sitting less than two hours total in an eight-hour day; standing for one-hour and 15 minutes at a time; walking for 35 minutes at a time; standing/walking less than two hours total

in an eight-hour day; needing to take unscheduled breaks during the work-day; using a cane while standing or walking; rarely lifting less than 10 pounds; rarely twisting, stooping, crouching/squatting; using his hands, fingers, arms only one percent of an eight-hour work day; being off task 25% or more of the time; being incapable of even low stress work; being absent from work more than four days per month due to the impairments and treatment; and being unable to function in social, public, or work environments (Tr. 960-62).   Notably, Dr. Culbertson did not have an opportunity to review the opinions of Drs. Tien or Anderson.

The ALJ acknowledged Dr. Tien's opinion that Plaintiff was limited to using one hand permanently (Tr. 63, 896).   Although not expressly stated, it can reasonably be inferred from the ALJ's analysis that he did not give controlling weight to Dr. Tien's opinion because it was inconsistent with other substantial evidence in the record (Id.).   *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376.   The ALJ indicated that he gave the opinion little weight because the overall evidence did not indicate Plaintiff would be completely precluded from using his left hand (Id.).   *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.   The ALJ explained that Plaintiff's weakness in his left hand is minimal and evidence indicates he would be limited with regard to the use of this extremity but could use it on an occasional basis as indicated in the RFC finding (Id.).   The ALJ's findings concerning the weight assigned to Dr. Tien's opinion are supported by substantial evidence in the record and comport with applicable law.

The ALJ acknowledged Dr. Anderson's opinion that Plaintiff "has limitations far worse than the even sedentary exertional level" (Tr. 63-64).   Although not expressly stated, it can reasonably be inferred from the ALJ's analysis that he did not give controlling weight to Dr.

13

Anderson's opinion because it was inconsistent with other substantial evidence in the record (Id.). *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376.   The ALJ gave Dr. Anderson's opinion little weight because objective observations, including those of Dr. Anderson, as well as Plaintiff's treatment history failed to support anywhere near the degree of physical limitation assessed by the doctor (Tr. 64).   *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.   The ALJ's findings concerning the weight assigned to Dr. Anderson's opinion are supported by substantial evidence in the record and comport with applicable law.

The ALJ explained that he gave Dr. Culbertson's opinion significant weight because the State agency evaluator conducted a comprehensive records review, formulated his conclusion based upon his expertise, and his opinion is generally consistent with the evidence of record (Tr. 62).   *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.   But, consistent with applicable law, the ALJ explained that he adjusted some of the limitations in that opinion based on evidence received after Dr. Culbertson reviewed the record and expressed his opinion.   *See* Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 632-33 (6th Cir. 2016); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) (Before according significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must indicate he is aware of this and has subjected the opinion to scrutiny in light of the subsequently received evidence.).   Thus, the ALJ's determination concerning the weight accorded to Dr. Culbertson's opinion is supported by substantial evidence in the record and comports with applicable law.

14

The ALJ has the discretion to determine whether to order a consultative examination or call a medical expert at the hearing. *See* <u>Deskin v. Comm'r Soc. Sec.</u>, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008); s*ee also* <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir. 2011) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). Here, the ALJ reasonably determined that these options were not necessary, and instead adjusted Dr. Culbertson's limitations based on the evidence received at the hearing level (<u>Id.</u>). S*ee* 20 C.F.R. §§ 404.1512(b), 416.912(b); <u>Ferguson v. Comm'r of Soc. Sec.</u>, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); *see also* <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir. 2011) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.")); <u>Simpson v. Comm'r of Soc. Sec.</u>, 344 F. App'x 181, 189 (6th Cir. 2009) (The ALJ did not err in failing to call a medical expert where the ALJ had extensive medical records, claimant's daily activities, testimony from vocational experts, and opinions from medical sources.). Thus, the ALJ substantially relied on Dr. Culbertson's medical opinion as well as subsequently received medical and testamentary evidence, in making the physical RFC finding. For the foregoing reasons, the ALJ's physical RFC findings are supported by substantial evidence in the record and comport with applicable law.

The ALJ addressed five opinions expressing functional limitations imposed by Plaintiff's mental impairments (Tr. 62-64). Two from non-examining state agency psychological consultants, two from a consultative psychological examiner, and one from a treating source (<u>Id.</u>).

A March 29, 2017 opinion from Danelle Stevens-Watkins, Ph.D., a non-examining state agency psychological consultant, at the initial level indicates Plaintiff's depression and anxiety are

non-severe impairments because they impose none and mild limitations in the four broad areas of function known as the paragraph B criteria[3] (Tr. 135-37, 151-53).   Notably, Dr. Stevens-Watkins considered the October 22, 2012 and January 31, 2017 opinions from the consultative psychological examiner, Ollie C. Dennis, Ed.D., in rendering the above opinion (*see* Tr. 132-33, 148-49).   The ALJ gave this opinion little weight because subsequently receive evidence at the hearing level indicated Plaintiff would have more than minimal work-related limitations secondary to his mental impairments (Tr. 62-63).   *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.   Thus, the ALJ's determination concerning the weight accorded to Dr. Stevens-Watkins' opinion is supported by substantial evidence in the record and comports with applicable law.

A July 7, 2017 opinion by Kay Barnfield, Psy.D., a non-examining state agency psychological consultant, at the reconsideration level indicates Plaintiff's depression, anxiety, and personality disorder are non-severe impairments because they impose none and mild limitations in the four areas of function known as the paragraph B criteria (Tr. 172-75, 191-93).   Notably, Dr. Barnfield considered the October 22, 2012 and January 31, 2017 opinions from the consultative psychological examiner, Ollie C. Dennis, Ed.D., in rendering the above opinion (*see* Tr. 175-76, 194-95).   She gave no weight to the October 2012 opinion due to its age and partial weight to the

---

3 The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria.   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).   The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme."   20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).   If the four areas of mental functioning are rated as "none" or "mild," the claimant's impairment is not considered "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.   20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

January 2017 opinion because it slightly overestimated Plaintiff's functional limitations (Id.). The ALJ gave Dr. Barnfield's opinion little weight because subsequently receive evidence at the hearing level indicated Plaintiff would have more than minimal work-related limitations secondary to his mental impairments (Tr. 63). *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376. Thus, the ALJ's determination concerning the weight accorded to Dr. Barnfield's opinion is supported by substantial evidence in the record and comports with applicable law.

Dr. Dennis conducted a consultative psychological evaluation on October 22, 2012 and prepared a report setting forth his diagnostic and functional opinions (Tr. 499-504). He opined that Plaintiff had a depressive disorder with a current Global Assessment of Functioning ("GAF") of 58, while Plaintiff's highest GAF over the past year was 68 (Tr. 503). Dr. Dennis also opined that Plaintiff's capacity to sustain attention to complete tasks is mildly to moderately limited; social interaction is generally mildly to moderately impaired; and his overall capacity to adapt to pressures of normal daily work activity is probably mildly to moderately limited (Tr. 503-04). The ALJ gave Dr. Dennis' functional opinion limited weight because it was not expressed in vocationally relevant terms, making it of little value when determining to what extent Plaintiff is limited as to work-related activities (Tr. 63). *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376. Thus, the ALJ's determination concerning the weight accorded to Dr. Dennis' opinion is supported by substantial evidence in the record and comports with applicable law.

Dr. Dennis conducted another consultative psychological evaluation on March 6, 2017 and prepared a report setting forth his diagnostic and functional opinions (Tr. 642-47). He diagnosed

Plaintiff with an anxiety disorder and alcohol use disorder (Tr. 646).  Dr. Dennis opined that

Plaintiff can probably understand and remember one and two stage instructions with mild

difficulty; his capacity to sustain attention to complete tasks is mildly limited; social interaction

was generally mildly to moderately impaired; and his overall capacity to adapt to pressures of

normal daily work activity is probably mildly to moderately limited (Tr. 646-47).  The ALJ gave

this opinion limited weight because it was not expressed in vocationally relevant terms, so it was

of little value when determining the extent Plaintiff is limited as to work-related activities (Tr. 63).

As mentioned above, on October 10, 2018, Jack Anderson, D.O., expressed his treating

source diagnostic and functional opinions concerning Plaintiff' physical and mental limitations

(Tr. 959-62).  The ALJ gave Dr. Anderson's opinion little weight because objective observations,

including those of Dr. Anderson, as well as Plaintiff's treatment history failed to support anywhere

near the degree of physical limitation assessed by the doctor (Tr. 64).  *See* 20 C.F.R. §§

404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.  The ALJ's findings concerning

the weight assigned to Dr. Anderson's opinion are supported by substantial evidence in the record

and comport with applicable law.

Additionally, the ALJ acknowledged that the record contained GAF scores that ranged

from 58 to 69 (Tr. 64).  The ALJ provided the following explanation for the weight assigned to

those GAF scores:

> The undersigned generally gives less weight to specific GAF scores,
> which may be considered a form of opinion, than to the bulk of
> other, more convincing evidence.  The GAF score represents a
> particular clinician's subjective evaluation at a single point in time,
> which may vary from day to day, from time to time, and between
> practitioners.  Most importantly, the GAF score is not designed for

> adjudicative determinations.   Indeed, other evidence may outweigh
> GAF scores, and in this case, the other evidence is more informative
> and is given more weight, as described above.   The GAF scores
> given by the claimant's practitioners were generally indicative of
> mild to moderate overall impairment.   However, it is impossible to
> determine what type or types of limitations or abilities are
> contemplated by these practitioners' GAF scores.   Further, a GAF
> rating may indicate problems that do not necessarily relate to the
> ability to hold a job; thus, standing alone without further
> explanation, the rating does not evidence an impairment seriously
> interfering with a claimant's ability to work.   Therefore, the
> undersigned gives little weight to the GAF scores in this case.

(Tr. 64).   The ALJ's findings concerning the weight assigned to the GAF scores are supported by substantial evidence in the record and comport with applicable law.   *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); Gayheart, 710 F.3d at 376.

The ALJ reasonably exercised his discretion when he determined that a consultative examination or testimony from a medical expert was not necessary to assess Plaintiff's mental RFC.   *See* Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2011) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). Contrary to Plaintiff's assertion, the ALJ did not assign mental limitations based on a review of raw medical evidence.   Instead, the ALJ considered the psychological opinions already in the record and adjusted those limitations in Plaintiff's favor based on subsequently received testimonial and medical evidence (Tr. 59-64).   S*ee* Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 189 (6th Cir. 2009) (The ALJ did not err in failing to call a medical expert where the ALJ had extensive medical records, claimant's daily activities, testimony from vocational experts, and opinions from medical sources.).   For the foregoing reasons, the ALJ's mental RFC findings are supported by substantial evidence in the record and comport with applicable law.

19

As mentioned above, Plaintiff takes issue with the ALJ's symptom evaluation because the ALJ purportedly made no effort to explain his conclusions.   Assessing a claimant's subjective allegations is integral step in making the RFC finding.   20 C.F.R. §§ 404.1529(a) 416.929(a).   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   §§ 404.1529(a) 416.929(a).   In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.

Here, the ALJ found that Plaintiff's statements—concerning the intensity, persistence, and limiting effects of his objectively established physical and mental conditions—were not entirely consistent with the medical evidence of record (Tr. 64).   Therefore, it was appropriate for the ALJ to consider other information and factors that may be relevant to the degree of pain and other symptoms alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

For example, the ALJ appropriately considered the level of Plaintiff's daily activities in determining the extent to which his purported pain and other symptoms is of disabling severity (Tr. 59-64).   20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993);

20

<u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990).   The ALJ also considered the frequency he sought treatment for the allegedly disabling conditions in assessing her subjective complaints (<u>Id.</u>).   20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).   Additionally, the ALJ considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence (<u>Id.</u>).   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and the other alleged physical and mental symptoms to the extent he testified (Tr. 59-64).   Contrary to Plaintiff's assertion, the ALJ explained his symptom evaluation conclusions (<u>Id.</u>).   The undersigned concludes that the ALJ's findings regarding Plaintiff's subjective allegations are supported by substantial evidence and comport with applicable law.

The RFC determination set forth in Finding No. 5 is supported by substantial evidence in the record and comports with applicable law.   Thus, Plaintiff's challenges to Finding No. 5 are unpersuasive.

<u>Finding Nos. 10 and 11</u>

1.   Arguments of the Parties

Plaintiff contends that Finding Nos. 10 and 11 are not supported by substantial evidence because the vocational expert's testimony is based on the RFC in Finding No. 5 which—for the reasons set forth above—is not supported by substantial evidence (DN 18 PageID # 1117-18). Alternatively, Plaintiff argues the vocational expert's testimony does not constitute substantial evidence because the ALJ's hypothetical questions failed to include the RFC limitation "occasional exposure to vibration" (<u>Id.</u>, citing Tr. 121-24).

Defendant asserts that Plaintiff's first challenge is, in essence, a meritless reformation of his argument attacking the adequacy of the ALJ's RFC determination (DN 21 PageID # 1140-41). As to Plaintiff's second claim, Defendant acknowledges that the ALJ's hypothetical question failed to include a limitation—only tolerate occasional exposure to vibrations—found in the RFC determination (Id. at PageID # 1141).   But Defendant indicates the error is harmless because none of the jobs identified by the vocational expert—counter clerk (DOT # 249.366-010), call out operator (DOT # 237.367-014), and surveillance system monitor (DOT # 379.367-010)—require any exposure to vibrations at all (Id.).

2.   Discussion

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When, as here, the claimant's RFC does not coincide with the criteria of a particular Grid Rule because it includes exertional and non-exertional limitations, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. §§ 404.1566(e), 404.1569a(d), 416.966(e), 416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777,

22

779 (6th Cir. 1987); <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524, 531, 535 (6th Cir. 1981), <u>cert. denied</u>, 461 U.S. 957 (1983).

For the reasons set forth above, the RFC set forth in Finding No. 5 is supported by substantial evidence in the record.   Thus, Plaintiff's first challenge to Finding Nos. 10 and 11 is without merit.   The Plaintiff's second challenge is premised on the ALJ's hypothetical questions to the vocational expert which failed to include one of the environmental limitations in the RFC determination.   Specifically, the hypothetical questions did not include Plaintiff can only tolerate occasionally exposure to vibration (*compare* Tr. 59 *and* Tr. 121-24).   But, as Defendant aptly points out, the ALJ is relying on the following jobs identified by the vocational expert: counter clerk (DOT # 249.366-010), call out operator (DOT # 237.367-014), and surveillance system monitor (DOT # 379.367-010) (Tr. 66, 121-24).   Review of the DOT job descriptions for each of these jobs confirms Defendant's assertion that none of the three jobs involves or requires any exposure to vibration.[4]   Because the ALJ's error is harmless, there is no reason to reverse the final decision of the Commissioner and remand the case for further proceedings.   *See* <u>Rudd v. Comm'r of Soc. Sec.</u>, 531 F. App'x 719, 730 (6th Cir. 2013); <u>Bradford v. Sec'y of Health & Human Servs.</u>, 803 F.2d 871, 874 (6th Cir.1986); <u>Brown v. Sec'y of Health & Human Servs.</u>, 801 F.2d 361, 363 (10th Cir.1986); <u>Allen v. Astrue</u>, No. 09-101-GWU, 2010 WL 1872882, at *4 (E.D. Ky. May 10, 2010) (error deemed harmless because a remand to clarify a portion of the hypothetical question to the vocational expert would be no help to the plaintiff).   Thus, Plaintiff's challenges to Finding Nos. 10 and 11 do not warrant the relief he seeks.

---

4 https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT

Conclusion

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

April 26, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

24

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   If a party has objections, such objections must be timely filed, or further appeal is waived.   <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, 474 U.S. 140 (1984).

April 26, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

25